May and Sloan v. Gamble.

ALVIN MAY AND ANDREW M. SLOAN, APPELLANTS, VS. ROBERT H. GAMBLE, APPELLEE.

1. A bond executed by the plaintiff and two sureties upon the issuing of a writ of attachment, in double the amount of the debt or sum demanded, is "good and sufficient" if approved by the clerk issuing the same though each of the sureties is not good for more than one half the penalty of the bond, if both together are worth double the amount of the debt sued for.

2. Where the charge of a judge to a jury embraces several propositions of law, or of law and fact, a general exception to the whole charge as erroneous is not a proper exception unless the whole scope of the charge is bad. A separate exception to each item of the charge objected to is contemplated by the rules.

3. Even though it be shown that there has been a mistake in the directions of the court to the jury, or the charge not as specific as might be thought proper, yet if it be upon a point on which justice has been done, or the mistake or omission could not have produced a different verdict, a new trial will not be granted.

4. Giving a note for an antecedent debt is not a payment of it, unless the note be received under an express agreement, or under circumstances from which an agreement may be fairly implied to treat it as a payment, or unless payment in fact result from it.

5. An agreement by a debtor and creditor that the creditor will, at a future day, accept new notes and securities in lieu of those held, giving additional time of payment of the indebtedness, cannot be enforced unless some valid consideration be received by, or benefit or advantage has accrued thereby, to the creditor.

Appeal from the Circuit Court, Second Judicial Circuit, for Jefferson County.

The opinion of the Court contains a statement of the case.

*S. Pasco* for Appellants.

The first error brought to the attention of the court relates to the attachment bond.

The defendant Sloan, by his counsel, moved to dissolve the attachment because of the insufficiency of the bond; 1st, there appearing on the face of the bond on file only one good and sufficient security instead of two as required by the statute, and, 2d, the sureties upon the bond being worth less than the amount required by statute. The bond is in the usual form, and two persons have signed their names as sureties, and each has sworn that he is worth the amount of the debt, that is one-half of the penalty of the bond. The statute (Thomp. Dig., 368, p. 4,) requires sureties in at least double the debt, and two in number; that is, if the addition of the word two has any force, it requires two persons, each of whom is worth double the debt or sum demanded, and this requirement is certainly not complied with by causing two persons, each of whom is worth only the debt or sum demanded, to sign the bond. This would seem too plain for argument. The court below urged that the sufficiency of the bond was determined by the Clerk, and that the court had no supervision over his action in the matter, and the defendant's remedy for any deficiency was by action upon the Clerk's bond. To this we reply—1st, that the remedy cannot be by action against the Clerk upon his official bond, because the law only requires a bond of the Clerk in the penalty of two thousand dollars, (Th. Dig., 59, sec. 1, p. 2,)

and in the present case the deficiency would be more than double that amount, so that this responsibility was not contemplated by the legislative power. 2d, That the court by analogy has the same authority to supervise the action of the Clerk in regard to the sufficiency of the bond that it has to judge of the regularity and sufficiency of the affidavit. This authority has been repeatedly exercised under a clause of the statute without question. Th. Dig. 369, sec. 3, p. 3. 3d, That this court has recognized the authority of the judge to examine into the sufficiency of the bond. 7 Fla., 336; 11 Fla., 127; 12 Fla., 144; ib. 628. And 4th, That under the statute no authority is vested in the Clerk or any other officer to approve the bond.

The plaintiff's counsel argued that the motion must be denied because the court could only consider upon the motion facts and matters appearing upon the face of the proceedings. This objection if valid might apply to the second ground upon which the defendants moved, but it could have no application to the first, for the insufficiency of the bond does appear upon its face. Plaintiff placed the proof of it there himself, and must accept the consequences, but if it had not been there the court should have admitted testimony as to the sufficiency of the security under the second ground of objection. The law requires no proof of the pecuniary ability of the parties upon the bond, but as the plaintiff has given it voluntarily he must be bound by it. The very words of the law recognize the principle contended for that the court has the supervisory power. It declares that the bond though defective shall not be adjudged void " although the attachment be dissolved by reason thereof "—i. e. its informality, (Thom. Dig. 368, p. 4.) If the two sureties, each good according to the affidavit for half the required amount, constitute one good and sufficient surety, as reason and precedent indicate, then the point here urged is settled by the case referred to in the seventh volume of our State Reports,

(Roulhac vs. Rigby,) already cited. In the only case cited by plaintiff's counsel, (Proskey vs. West, 8 S. & M., 711,) the matter of defect was not apparent on the face of the proceedings, and it will be borne in mind that in Mississippi, where this decision was rendered, a defendant in attachment is not even permitted to contest the proof of the affidavit as in this State.    10 S. & M., 518.

The general authority of the court in this matter is recognized in Drake on Attachment, sec. 124, and cases are there cited in support of the authority, and these authorities are in harmony with the decisions this court has made whenever the matter has come up for consideration.   4 Humph., 311 ; 12 S. & M., 514.

The second and third matters assigned as errors relate to the third ground upon which the defendant Sloan moved to dissolve the attachment.    The indebtedness was denied, and upon the issue thus raised and tendered the parties went to trial before the court, neither calling for a jury.    The issues raised at the subsequent trial before the jury upon the pleas were substantially the same as in the trial before the court of the question of indebtedness under the attachment proceedings, and the same testimony with but little variation was introduced at both trials ; so to save repetition, the matters of law this appellate court is called upon to review will be considered *seriatim*, without reference to the particular trial at which they arose.

These matters of law arise upon the question of the substitution of one contract in settlement or satisfaction of a previous contract.

The facts as brought out at the trial are briefly these : Gamble sells land to May, Sloan becomes May's surety. After the payment of a large part of the purchase money, Sloan proposes a new bargain and agreement in regard to the land, proposing to become the purchaser himself.    May assents, and Gamble accedes to it and receives two thousand dollars in money upon it.    Sloan, upon the faith of the new

bargain in which he is principal, substituted in lieu of the original bargain in which he was surety ; pays May seven thousand eight hundred dollars or more ; performs punctually every condition precedent, and stands faithfully to the compact until Gamble fails to perform certain conditions it requires of him.    Gamble then falls back upon the old bargain, claiming the right so to do because he has obtained no additional advantage or consideration from it, and for other reasons appearing in the record, and now seeks to be released from the new or substituted bargain.    If the old agreement is still in force he can recover in this action ; if the new agreement can be substituted he must fail, provided the attachment is sustained.

The questions of law raised on the trial and included in the assignment of errors are as follows :

1st.  The defendants, under the plea of payment, attempted to sustain the new agreement or contract.    The court in its charge to the jury says the first plea is " payment ;" under this " it is incumbent upon the defendant to prove that he paid the notes sued upon ; this must either be in money, or if by other notes, he must show that they have been paid." The last clause requiring proof of the payment of the notes alleged to have been given in payment of the former notes, is one of the errors assigned.

This can hardly be considered as an open question after the decision delivered by Ch. J. Marshall in Sheehy vs. Mandeville and Jamesson, (6 Cranch, 253.)  The counsel for plaintiff in that case in his argument used almost the same words as the judge in his charge in the case at bar, but the court says : " This principle appears to be well settled.    The note of one of the parties or of a third person may, by agreement, be received in payment. The doctrine of *nudum pactum* does not apply to such a case ; for a man may, if such be his will, discharge his debtor without any consideration." 6 Cranch, 264 ; 1 M. & W., 153 ; 2 M. & W., 20 ; 4 J. J.

Marh., 3 ; 2 Greenleaf on Ev., secs. 520, 523 ; Keer's Action at Law, *6 ; 1 Saun. Pl. and Ev., 29.

2d. The defendants attempted, under the plea of Accord, to sustain the new agreement. The court charged the jury that " a new contract to have the effect of discharging a former debt by accord and satisfaction, must be fully executed."

As the defendant had only attempted to show that he had performed his part of the contract until a breach of it by the plaintiff, and to show that the new contract was accepted in satisfaction of the old before its execution and without reference to its execution, the effect of this charge was to deprive him of the benefit of his evidence introduced in support of this plea.

The court in its charge excludes the consideration of a large class of cases where a promise is received in satisfaction without regard to its ultimate performance, and looking to the remedy provided by law for the enforcement of the new promise. Notes to Cutler vs. Powell, 2 Smith's L. C., 10. " An accord with mutual promises to perform is good, though the thing be not performed at the time of action." 2 B. & Ad., 328. " Where the promise on one side is the consideration for that on the other, performance is not a condition precedent to the right of action." Notes to Cumber vs. Ware, 1 Smith's L. C., 253 or *150.

All that is requisite upon this head to make a good accord is " it must be complete—that is, everything must be done which the party undertakes to do. *. * The debtor will be required only to execute the new contract to that point whence it was to operate a satisfaction of the pre-existing liability." 1 Bouv. Law Dict., (12th ed.,) 53—Accord, 2, 3 ; 2 Parson's on Cont., *195, n. ; Language of J. Redfield in Babcock vs. Hawkins, 23 Vt., 561 ; 2 Greenf. on Ev., sec. 31 ; 3 Johns. Cas., N. Y., 243. (This case is overruled by Russell vs. Lyttle, 6 Wend., 390, according to Greenf., Over-ruled Cases, 101, but the same author says that Russell vs. Lyttle was decided on the earlier authorities. 2 Greenf. on Ev.,

sec. 31, n. 4.) 1 Gray, 245, 249 ; 16 Johns., 86 ; 3 Watts & Serg., 277.

3d. The defendant set up the same defence substantially, by an equitable plea under the statute. The court virtually excludes this whole defence by charging the jury as follows: " An agreement to have the effect of discharging a former debt by the substitution of a new contract, must be formed upon a new consideration." The plea had set up no new consideration, and the plaintiff had admitted its sufficiency. in law by filing a replication to it. The charge of the court then had the same effect as if the plea had been demurred to and the demurrer sustained.

The case of Sheehy vs. Mandeville, already cited, (6 Cranch, 264,) is sufficient to prove that a new consideration is not necessary to support a new contract taken in substitution or payment, or satisfaction of one already existing. 24 Conn., 613 and 620 ; 1 Wels. Hurls & Gor., (Exc.,) 601 ; 7 Md., 259. A promise is a good consideration for a promise. 8 Rich., S. C. (law,) 355 ; 1 Pars. on Con., 373 ; 8. Rich., S. C., (law,) 416; 19 Barbour, (N. Y.) 428 ; 5 Tex., 512 ; Smith on Cont., 191 or *115, n., cases there cited ; 2 Pars. on Con., *194.

" A rescission may be effected either by a novation—that. is, the entering into a contract, which takes the place of and puts an end to the original one—or by a mere agreement to rescind." Fry on Sp. Perf. of Con., 399 or *301. The extinction of the prior debt is consideration enough to support a novation. 1 Pars. on Con., *190 ; 25 Pa. State, (1 Carey) 481.

The question is not one of consideration ; it is of bargain and agreement. If the minds of all the parties met and so agreed, the original contract could have been annulled at any time, even if no new sale of the land had been made. There) was no legal obstacle in the way and it was a mere question of evidence whether the parties did agree as the defendants allege.

4th. In the motion for a new trial upon behalf of Sloan,

before the judge in the attachment proceedings, error was alleged in this, " that the plaintiff is declared not to be bound by his new contract upon the ground that there was no additional consideration for the same, although it appeared in evidence upon the trial that it had been partly executed."

It is well settled that a parol contract which could not be enforced under the statute of frauds, because it was not in writing, cannot be avoided by one who has received the whole or.a part performance of the agreement. 1 Des. (S. C.,) 350 ; 1 Black., (Ind.,) 58.

Gamble admits that part of the purchase money was paid by Sloan under the new agreement, and the court has so found. And he cannot under any pretence avoid his bargain while retaining its benefits. Maxim—" *Qui sentit commodum, sentire debet et onus.*" 2 Bouv. Inst., n., 1,433 ; 5 East, *449 ; 2 Parsons on Con., *192, and cases there cited ; 1 Metcalf, 550. If the plaintiff is relieved from his bargain because he does not perform his part of it, he receives a benefit from his own wrong.

5th. Again, error was alleged in this " that the said new contract is declared not binding upon plaintiff, (Gamble,) because it was a contract for the purchase of lands, without a memorandum in writing to support the same, although it appeared on the trial that part of the price of the lands had been paid by defendant (Sloan) to plaintiff, and that defendant had gone into possession of the lands under the said agreement, facts which would make it such a contract that a. Court of Equity will enforce;" and although it appeared further that the deed and mortgage were subsequently executed, which made the new .contract valid *ab initio*, if there was any original defect therein.

If this objection as to the memorandum in writing had been urged or relied upon by the opposing counsel, no notice would have been here taken of it, for the statement of the proposition is its own refutation. The verbal contract, al-

most invariably from the nature of things, precedes the memorandum ; the *congregatio mentium* is generally thus reached, and if a deed is executed without any intervening memorandum, is the transaction invalid? Here there was part payment, followed by possession and execution of the deed, for Col. Gamble says it was executed, and Mr. Papy, who, as a lawyer, must have known the legal force of the word, testifies that it was executed. Execution of a deed includes delivery. 1 Bouv. Law Dict., 553, Execute; and it is well settled that a delivery need not be manual. Smith on Cont., 56 or *7, and cases there cited, among them 5 B. & C., 671, 11 E. C. L. R. The deed having been executed, the grantor cannot contradict it. "*Nemo contra factum suum venire potest.*" Coke 2d Inst., 66.

In recapitulation, we claim to have proved that the attachment should have been dissolved, 1st, because of the defect apparent upon the face of the bond, the court having jurisdiction to judge of such defects, the plaintiff affording the proof thereof himself, and the defect being fatal under a former decision of this Court. 7 Fla., 336. 2d. Because the securities were not good and sufficient under the statute, and the defendant Sloan being ready to prove the same. 3d. The defendant Sloan was not indebted upon the cause of action sued upon, it having been paid and satisfied by the substitution and execution of a new agreement. If upon these grounds, or any of them, the attachment should have been dissolved, then the plaintiff has no footing in court against the defendant Sloan, for the writ was commenced against him by attachment and he did not plead to the declaration until after the court had refused to dissolve the attachment, denied the motion for a new trial and exceptions had been taken to the action of the court. "When any suit shall hereafter be commenced by attachment, and the same on motion be dissolved before plea to the action, then, in every such case, the suit shall abate and be dismissed from court." Thomp. Dig., 370, sec. 3, p. 5.

But if the attachment was properly sustained, we claim to have shown that the verdict of the jury should be set aside and a new trial granted, because the charge of the court misled the jury and prevented them from giving the defendants a verdict upon any of the issues raised, and thus deprived them entirely of the benefit of their testimony.

*Papy & Raney* for Appellee.

The appellants except to the rulings of the court below, as well upon the trial of the motion to dissolve the attachment, as upon the trial of the main issues made by the pleadings.

*Attachment.*—The attachment is against the property of the defendant Sloan, he being a non-resident. Sloan moved to dissolve the attachment on the following grounds :

1st. Because there appears upon the attachment bond only one good and sufficient surety.

2d. Because the sureties on the attachment bond are not, " as Sloan is informed and believes, good and sufficient in at least double the sum demanded."

3d. Because the allegations of indebtedness made in the attachment affidavit are not true.

The fact is that the attachment bond is in more than double the sum demanded in the affidavit, and is in the form prescribed by law, having two sureties thereto.

To sustain the first and second grounds of the motion, the appellant, Sloan, relied upon the affidavits made by the sureties to the effect that they were respectively worth the sum of $5,250 over and above their liabilities and exemptions.

The court below was correct in overruling these grounds for the following reasons :

1st. Even admitting that the justification was necessary, (a practice never followed in this State except during the existence of the Code,) it shows sufficient sureties under the law. Thomp. Dig., 368, sec. 4.

2d. Admitting that each surety should be worth the

amount of the penalty of the bond (which in this case is $10,500) over and above his liabilities, the justifying affidavit does not establish nor imply that they were not, nor is there any evidence in the record that they were not worth this amount. The affidavit does not state that they were worth each *only* $5,250.

3d. The clerk is made by law the judge of the sufficiency of the sureties, and when the bond is proper in form, his decision cannot, in a case like the present, be inquired into. It is a matter to be decided by him before the writ issues. Thomp. Dig., 367, sec. 1, 368, sec. 4; Drake on Attachment, sec. 145; 8 S. & M., 711.

The third ground for dissolving the attachment urged by the appellant, Sloan, is governed by the principles of law discussed hereafter in connection with the issues made upon the second and third pleas of the appellants.

*Main Issues.*—The first plea is, payment.

The action is brought to recover a balance remaining unpaid on the promissory notes sued on, and the declaration specifically states and admits what payments have been made. There is no testimony in the record supporting the plea, so we do not discuss it.

The second and third pleas are pleas in the nature of accord and satisfaction.

Upon the issue joined on the second plea of the appellants, it was incumbent upon them to show that the respondent received from them the notes and drafts mentioned in the plea in lieu of the notes sued upon and in discharge thereof. And under the issue joined upon the third plea, appellants were required to show that the respondent entered into a new agreement in regard to the lands, in part payment of which the notes sued upon were given, and that by the terms of this agreement the respondent accepted the appellant Sloan as the purchaser of the land in lieu of the appellant May, and accepted in payment and satisfaction of the outstanding notes originally given by said May and

Sloan (of which the notes sued on are two) the drafts and notes recited in the second plea, the notes being secured by mortgage as therein stated. If the new agreement set up was without consideration, and was not executed, the performance thereof by the respondent was not obligatory upon him, but "*nudum pactum.*" This plea is made as an equitable plea, but the testimony does not support it, nor show any legal or equitable defence.

The principles of law by which the verdict on the second and third issues, and the decision on the third ground for dissolving the attachment, are to be considered, are those generally governing all pleas of accord and satisfaction and are as follows :

*Accord must be executed.*

Accord is a satisfaction agreed upon between the party injuring and the party injured, which, when *performed*, is a bar to all actions upon that account. 3 Black. Com., m. p. 15.

The mere consent of the party to accept a satisfaction, without an actual satisfaction, is not sufficient to discharge the other. The accord and satisfaction must be perfectly complete and executed. 3 Black Com., m. p. 15 and n. 42; 1 Saund. P. & E., 26.

*Part execution, or readiness to perform or tender of performance, not sufficient.*

An accord must be completely executed before it can produce any legal obligation or effect, and part execution of the accord and tender of the residue is insufficient. Saund. P. & E., title Accord & S., m. p. 29–27.

Part payment and an agreement to take the residue at a future day, cannot be plead as satisfaction in bar. 6 Wend., 391-2 ; 20 Conn., 559.

Where there is an agreement to pay or deliver money or goods, it is not sufficient to show that the person pleading it has always been ready to pay or deliver, or even a tender and refusal, but an actual acceptance thereof by the plain-

tiff must be proved. Saund. P & E., ib. 29 ; 2 Bibb., 404 ; Ib., 25 ; 6 Wend., 390 ; 23 Ib., 342 ; 19 Ib., 516 ; 7 Blackf., 582.

*Must be given and accepted in satisfaction.*

Delivery must be proved unless not denied, and delivery must be proved to be *in satisfaction.* 1 Saund. P & E., m. p. 26.

To show that the accord and satisfaction were simultaneous, and consisted of the delivery of a certain thing, it must be proved not only that it was delivered, but that it was deemed in satisfaction. 2 Par. on Con., 199 ; 1 Wash. C. C. R., 328 ; 3 Blackf., 354.

Whether it was accepted in satisfaction is a question for the jury. 2 Par. on Con., n. d., 98, and citations.

*It must be advantageous to the creditor.* 1 Metc., 378 ; 2 Par. on Con., 199 ; 4 Dana, 530.

*Both parties must perform their parts.*

Where it was agreed that plaintiff and defendant should each deliver up his part of an indenture to be cancelled, and the defendant had delivered up his part, it was held no accord and satisfaction. 3 Black., 15, n. 42 ; 3 Levinz, 2.

Every part of the new matter agreed to be received as satisfaction must be effectual, so that if a part fail or do not take effect, the whole agreement is bad. The legal notion of accord is a new consideration to discharge the debtor. 1 Smith's L. C., 445.

*Charge of the Judge.*—We submit that there is no error in the charge of the Judge, and that if there be any, that the verdict is consistent with right and justice, based upon the law and the evidence, and this court will not disturb it, recognizing the familiar principle that in such cases courts never do grant new trials, whatever the misdirection or error of the Judge.

Upon the above principles we submit :

1. That the respondent never received the notes and drafts mentioned in the second plea in satisfaction and dis-

charge of the notes sued on; that in fact the notes never came to the possession of the respondent, but were placed in the hands of a depositary, Pasco, under an executory agreement between the appellant Sloan and the respondent, to be held by him till respondent should deliver deed and original notes; that this agreement was not obligatory or binding upon respondent, being founded upon no valuable consideration.

2. That the drafts were to be a part payment on the original note then due, when paid, and were received as such and credited upon this note as such.

3. That the original transaction was to stand until the new one was fully executed, and the new agreement never was executed, and was *nudum pactum*.

4. Admitting that the delivery of the drafts was one step in the new agreement, there was still no cancellation of the old agreement. It amounted, then, in fact, assuming that prompt payment was made of the drafts, to but part payment of a very large unpaid balance, and an executory agreement resting upon no valuable consideration as to the balance of the notes which was never carried out.

5. That before the agreement was executed, Sloan confessed his inability to perform his part, and that this relieved respondent from all *moral* obligation to perform what he never was under any *legal* obligation to do.

6. That there was no agreement to take Sloan as purchaser of the land, and no contract of purchase made between them on the 1st November, 1872, but that the whole transaction was an application by Sloan for indulgence and an agreement upon the part of Gamble to grant it. That in it Sloan was the only party seeking to be benefitted, and the benefit offered by Gamble was a mere gratuity, he, Sloan, being as much liable upon the old notes as he could make himself by any new obligations and they being for the land in question.

7. The payment made on the drafts of $1,000 each, being

less than the amount due on the 1st day of November, 1872, on the note falling due Jan'y 1st, 1872, was not a consideration for the agreement to take new notes.

RANDALL, C. J., delivered the opinion of the court.

This suit was commenced by an attachment against Sloan as a non-resident, and by service of a summons upon the defendant May. The amount claimed in the affidavit upon which the attachment was issued, was $5,248.20. The penalty of the bond executed upon the issuing of the attachment was $10,500 and was signed by two sureties, who each made oath that he was worth the sum of $5,250 over and above his liabilities and the exemptions allowed by law.

The defendant, Sloan, made a motion to dismiss the proceedings and the attachment on the grounds that the bond is insufficient because it does not appear that the sureties are each worth double the amount of the sum demanded, and therefore the two sureties are only equal to one such as is required by law; and further, that the sum claimed is not actually due as stated in the affidavit.

The motion to dismiss was denied by the court.

As to the first ground of the motion, the insufficiency of the sureties on the bond, it appears that each of the sureties made oath that he was worth the amount of the debt demanded. The judge decided that the bond was good and sufficient, to which the defendant excepted and this ruling is assigned as error.

The law requiring and prescribing the requisites of the bond in such cases is found on page 368 of Thomp. Digest. It requires that the plaintiff "shall enter into bond with two good and sufficient securities, payable to the defendant, in at least double the debt or sum demanded." The bond filed in this case was executed in due form and in double the amount of the sum demanded by the plaintiff and two securities. Each of them made affidavit that he was worth the

amount due as stated, though the statute does not require such affidavit to be made or any affidavit.

In this form the bond was approved by the proper officer as sufficient, and in our judgment it was a compliance with all that the law requires. There was no evidence offered to show that the securities were not perfectly good for the requisite amount. The judgment of the officer as to the sufficiency of the securities seems to be the only test provided by the statute to authorize the issuing of the writ, and if the sufficiency of the bond, good upon its face, is attacked, it should at least be shown that the officer acted corruptly, or that he was imposed upon or improperly induced to accept irresponsible or insufficient securities, and this would present an entirely different question. As to the other ground of the defendant's motion, that the amount claimed is not due as stated in the plaintiff's affidavit, it will be disposed of in considering the evidence.

This suit was brought by plaintiff upon two promissory notes given to him by May and Sloan jointly, and dated July 22, 1869, for thirty-five hundred dollars each, payable respectively on the first of January, 1872, and the first of January, 1873, with interest at eight per cent., payable an-annually, with payments endorsed thereon amounting to $3,652.89.

The defendants pleaded as follows :

1st. That the notes were paid before suit.

2d. That before action plaintiff received from defendant Sloan, upon a valid agreement between them made Nov. 15, 1872, in lieu and place of the two notes, and in full satisfaction and discharge thereof, two drafts of $1,000 each, drawn by Sloan & Co. of Savannah, one at 15 days upon Coulter & Co. of Baltimore, and duly accepted by them, and one due 15th of February, 1873, upon A. M. Sloan & Co., and accepted by them ; also three promissory notes, one for $1,957.20, due May 1, 1873, and two for $3,500 each, due February 1, 1874, and February 1, 1875, all drawing

interest at 8 per cent., payable to plaintiff's order and secured by a mortgage on lands that day bargained and sold by plaintiff to Sloan.

3d. For an "equitable defence" defendants allege that defendant Sloan signed the notes sued on as surety for May, of which plaintiff had knowledge at their date, and that before suit plaintiff entered into a new agreement in regard to the lands in part payment for which the notes were given, by the terms of which new agreement, May, for a valuable consideration, sold to Sloan his interest in the lands, and the further consideration that Sloan would assume and pay the balance due to plaintiff; and plaintiff received and accepted Sloan as the purchaser instead of May, and assented to Sloan's taking possession, and released and discharged May from all liability in regard to the purchase, and accepted in payment and satisfaction of the notes sued on, and of other notes given for the purchase of the lands, the notes and drafts mentioned in the second plea and secured by mortgage. That under the new agreement Sloan was to deliver the drafts to plaintiff and place the notes and mortgage in the hands of a depositary to be delivered to plaintiff on his placing with the depositary a deed of the lands to Sloan, and the cancelled notes. That Sloan has complied with his part of the new agreement to be performed before the delivery of the deed, but plaintiff has failed to deliver the deed and the notes. That Sloan has paid a portion of the purchase money under the new agreement to plaintiff and to defendant May, and has gone into possession of the lands, and he insists that plaintiff ought not to further prosecute the suit upon the cancelled notes.

The plaintiff replying to the second plea denies that he received the drafts and notes mentioned in satisfaction and discharge of the notes sued on.

To the third plea plaintiff replies denying the allegations therein as to himself, and says that the pretended new agreement was never executed, was without consideration and

*nudum pactum.* That the new notes mentioned are not, and never have been in his possession, and are still in possession of Sloan or his agent or attorney.

The cause was tried before the Circuit Court and a jury, at the fall term, 1873, in Jefferson county, and the plaintiff had a verdict for the amount due upon the notes sued upon, assessed at $5,249.43.

The defendants moved for a new trial upon the grounds (generally stated) that the verdict was contrary to law and to evidence, and that the judge misdirected the jury in his charge.

This motion was overruled and judgment rendered against the defendants, from which judgment they appealed to this court.

As appears from the testimony upon the trial of the cause, the notes upon which this suit was brought were the second and third to become due of four notes of equal amounts, given as the joint notes of the defendants May and Sloan to plaintiff, upon the purchase by May from plaintiff of a plantation, and certain stock and implements, for the price of $20,000. A payment of six thousand dollars was made by draft upon Sloan & Co., which draft was paid by them. The contract for the purchase was in writing, dated July 22, 1869, signed and sealed by May and Gamble. As part of the contract, Gamble executed to May a bond conditioned that he would execute to him a deed upon the payment of the draft for $6,000. By an instrument indorsed thereon, signed and sealed by May, he assigned to A. M. Sloan & Co. the bond and gave them "full control" of the same on the 27th February, 1871. An admission of parties in writing shows that Sloan became a part owner of the plantation in 1870.

*Mr. Sloan*, in behalf of defendants, testifies that in November, 1872, he met Mr. Gamble by appointment at Tallahassee, and made known to him that he desired to make a change in the purchase, and made to him this proposition,

which he accepted : There was then due on one of the notes about $2,800, or $3,000. I proposed to give him a 15 day draft on Coulter & Co., of Baltimore, for $1,000 ; a draft payable February 15, 1873, on A. M. Sloan & Co., for $1,000 ; two notes for $3,500 each, payable February 1, 1874, and February 1, 1875, with interest from January 1, 1873, and the balance in a note for $1,957.20, due May 1, 1873. It was agreed that Mr. Pasco should act for both parties in making this settlement, drawing the papers and carrying it out. The drafts were drawn and signed by witness and delivered to Mr. Gamble as payment on this contract. The new notes were then drawn and signed and placed in the hands of Mr. Pasco. Witness was to execute a mortgage on the property to secure the payment of the notes, which mortgage he executed next day and left with Mr. Pasco as agreed, to be delivered to Col. Gamble as soon as he could perfect his deed, his wife being absent but looked for by the 20th of December. The understanding was that the original notes now sued were retired and were to be delivered to Mr. Pasco when Gamble executed the deed. The arrangements between witness and May were fully explained to Col. Gamble at Tallahassee. He assented to witness becoming the purchaser from him of the lands at the time the drafts and notes were executed on the 15th November, 1872. They were given for the purchase of the plantation, and witness went into possession of the land under this purchase at the close of the year. This was with Col. Gamble's consent.

On cross-examination, witness said Mr. Pasco was to deliver the new notes and mortgage to Col. Gamble, when the Col. should deliver to him the deed and the old notes. The old notes were to belong to Mr. May after they were delivered to Mr. Pasco.

*S. Pasco*, a witness for defendant, testified : The transactions between May and Sloan were explained to Col. Gamble and it was arranged that Sloan was to become the pur-

chaser, the deed to be executed to him ; the balance of the purchase money due on the original purchase to be estimated to January 1, 1873, and Sloan's individual notes to be substituted in the place of the old notes. The drafts were turned over to Col. Gamble at the time, November 15, 1872, as a part payment on the new purchase. Witness still holds the notes and the mortgage under the agreement, not as Col. Sloan's, but to be delivered to Col. Gamble whenever he complies with his agreement. He has never tendered me the deed or the old notes as it was agreed that he should. The deed was to be delivered before any of those notes were paid, and for that reason all the notes were embraced in the mortgage. Col. Sloan has more than once applied to me for the deed, and I have more than once reminded Col. Gamble of his neglect or failure to deliver the deed under the terms of the agreement. Witness' duty, as he understood it, under this agreement was to deliver the three new notes and mortgage to Col. Gamble, to deliver the old notes to Mr. May and the deed to Col. Sloan.

*Cross-Ex.*—Do not know that Col. Gamble ever refused to carry out that agreement. He never tendered the deed to me. It has never been delivered to me. I never made any demand for it, never considered that I had any right to do so.

*R. H. Gamble,* plaintiff, sworn, testified : The notes sued on were given by May and Sloan for land sold to May ; only one of them was past due on the 15th November, 1872. On that day, Col. Sloan with Mr. Pasco came to my office in Tallahassee, and stated that he wished to get time on the payments which were due and past due. He said that May had failed, and asked me to enter into a new arrangement with him. I suggested to Mr. Sloan that May held my bond for title. They informed me that the bond had been transferred to Mr. Sloan. Sloan then urged me to make a new arrangement ; he wanted additional time to meet the balance of the payments. Proposed to pay me $1,000 in a 15 day

draft on Coulter & Co., another draft on his house in Savannah for same amount, and balance in three payments, one to fall due 1st May, 1873, for $1,957.20 ; one for $3,500, due February 1, 1874, and another for like amount to fall due February 1, 1875. I suggested to him that if I agreed to that he ought to pay me ten per cent. interest on the last two notes. He urged me not to make that demand and I yielded. It was then agreed between us that we should go into the new arrangement as proposed. Told him I could not give him title on account of my wife's absence. He said it would make no difference, that Mr. Pasco, his agent, would draw up the papers and the matter could be consummated afterwards. Calculations of the interest on the various notes made by Mr. Pasco and Col. Beard. The two drafts were then drawn by Mr. Sloan ; I felt a little hesitancy in taking those drafts and took Mr. Pasco one side and asked him whether it would not be better for me to have them inserted in the mortgage. Mr. Pasco suggested that it was unnecessary to put them in the mortgage because they would become due in all probability before the deeds would be exchanged, and if they were not paid, I would have the original notes to fall back on. The drafts were then given to me, and I requested Col. Beard to credit them on the note which was past due, which he did on that day while the other gentlemen were in the room. The drafts were paid.

Mr. Pasco sent me the deed to be executed and it was executed by myself and wife, but not delivered. After executing the deed I wrote to Col. Sloan asking whether I could rely with certainty upon payment of the note falling due May 1st, 1873. He answered on the 30th April, that he could not pay it. I notified him in one of the letters that if he did not pay that note due May 1, I would fall back on the original notes. I notified Mr. Pasco that I was ready to carry out the arrangement, but that Mr. Sloan would not pay the note due May 1st. Witness related some further conversation with Mr. Pasco, including a proposition to extend the time to

December 13th on that note, provided Sloan would consent to advance the other notes from February 1st to January 1st, which proposition was declined by Mr. Sloan. In July or August, I sent the deed and the old notes to Mr. Papy at Savannah, requesting him to tender the deed and complete the arrangement, provided he would pay the $1,957.20 note past due, and receive the mortgage and the new notes. Mr Papy returned the papers I had sent him, saying Mr. Sloan had declined paying the money on that note. I did not receive the drafts and notes and mortgage in satisfaction and discharge of the original notes. Mr. Sloan did not come to me with a proposition to buy lands but to inform me of Mr. May's condition, and that he would have to become the owner of the land and work it out himself. His object, as I understood it, was to get an extension of time. There was nothing said about the value of the land, but it was all about the remaining indebtedness for it. There was not a word said about the old notes being cancelled; on the contrary, he was reminded by Mr. Pasco that he could fall back on them. Mr. Pasco was not my agent. There was then past due on one of the original notes a larger amount than the two drafts. Col. Sloan offered no consideration or benefit for acceding to his request, only the promise of prompt payment. I was not in possession of the land and did not put him in possession.

*Cross-Ex.*—The understanding in Tallahassee was, that the deed was to be executed and delivered to Mr. Pasco after the return of Mrs. Gamble; she returned late in January. I have never tendered the deed to Mr. Pasco, but had it ready and so informed him, and that Mr. Sloan had said that he could not pay the note due in May, and for that reason I did not deliver the deed to Mr. Pasco.

*Wm. K. Beard* testified in behalf of plaintiff: Was in Col. Gamble's office in Tallahassee 15th November, 1872. Col. Sloan and Mr. Pasco came in, and Sloan stated that he came to see Col. Gamble for the purpose of obtaining an ex-

tension of the time on payment of the balance on the plantation. That he had purchased May's interest. He made a proposition to make certain payments if the new arrangement was accepted. I indorsed the credits on the old note of the two drafts on that day. Col. Sloan expressed himself as under obligations to Col. G. for giving him this extension. I heard nothing said about a sale or purchase of lands, but the arrangement was entirely upon an extension of time. I did not understand that Col. Gamble received the new notes in satisfaction of the old ones, but I understood he held the old notes as his property until the new arrangement should be consummated.

*M. D. Papy*, witness for plaintiff, testified : In August, 1873, was in Savannah and received a letter from Mr. Gamble with a deed of the land to Sloan, executed by Gamble and his wife, and the notes signed by May and Sloan, with a request in the letter to tender the deed to Sloan, in performance of the understanding or argeement made in November, 1872, and to deliver the deed and original notes if Mr. Sloan would pay the amount of the note due May 1st, 1873, and deliver the other notes and mortgage to secure them. I called on Mr. Sloan and explained the object of the visit, exhibited the deed and the old notes, and made the proposition authorized by Col. Gamble. Mr. Sloan said he could not pay the money at that time.

*Cross-Ex.*—I do not recollect that Col. Sloan demanded the note payable in May from me ; I understood those notes were in the hands of Mr. Pasco as Mr. Sloan's agent, and that of course it was in his own control. I returned the papers to Col. Gamble and wrote him the result of the interview.

*Col. Sloan recalled.*—The credits of the two drafts were not made in my presence ; it was not asked for ; never was expected ; they were paid upon the new contract. The new notes were filled up and I signed them at Tallahassee, and

they were deliverd to Mr. Pasco as the property of Col. Gamble. That is my understanding.

*S. Pasco recalled.*—I did not see the credit entered on the note; if it was done in my presence my attention was not called to it. In regard to the side talk with Col. Gamble, I did suggest the two ways mentioned in his evidence, in which he could retain his security, but neither of them was incorporated in the bargain. The new notes are still in my hands in accordance with the original agreement, as Col. Gamble's property, whenever he gives me the deed and the old notes as he agreed. I have no authority even to deliver them to Col. Sloan. Col. Gamble has never notified me prior to the commencement of this suit that he would refuse to carry out the new agreement. He has sought my aid in relation to the $1,957.20 note, and I have written Col. Sloan in regard to it.

*Cross-Ex.*—The aid I referred to was to make the proposition for the extension of the note due May 1st, and other matters. Prior to this, Col. Gamble complained to me that Col. Sloan had not paid this note. I reminded Col. G. that he was the first defaulter in failing to deliver me the deed as he had agreed.

This is the substance of all the testimony incorporated in the record as given before the jury. Upon the trial of the traverse before the judge, *Alvin May*, one of the defendants, testified that he had sold his interest in the lands to Sloan and assigned the bond to Sloan & Co. "That Sloan was to give him so much, a certain amount for his interest in the lands and half the profits accrued at that time, and to take up his paper in the hands of plaintiff, and the agreement was carried out January 1, 1873, and he received the amount due him in the arrangement."

*Mr. Sloan*, upon the traverse before the judge, testified that the indorsement on the bond for title was signed by May, and was as a collateral security to A. M. Sloan & Co. That he bought May's interest in his individual capacity,

with the understanding that he should become responsible to plaintiff, and asked plaintiff to extend the time of payment for a year, which he did. That *after the purchase from May,* he went to plaintiff and made the arrangement set forth in the papers submitted, and that two months after the making the arrangement with plaintiff he paid May $7,800, believing that plaintiff would carry out his part of the agreement. The whole matter of the business with May was explained to plaintiff at the time of the new agreement.

On cross-examination, Sloan testified that the payment to May was a *credit on his liability to him,* and he was seeking to collect that debt, and May still owes him a large balance, which is a part of the same indebtedness on which the credit was made.

*Col. Gamble* also testified upon the traverse, that his action in the transaction on the 15th November, 1872, "had not the remotest connection with any transaction between May and Sloan, and that he had no idea till to-day that Sloan paid May any consideration for the land." That all the propositions came from Mr. Sloan. That Mr. Pasco did not act in his behalf at all except in the matter of the last proposition (as to time and interest) which Sloan rejected.

The 4th, 5th and 6th errors assigned are as follows :

4. In the trial of the issues raised by the pleadings, the rulings of the court were erroneous and debarred the jury from bringing in a verdict for the defendant upon any of the issues, and the new trial applied for should have been awarded.

5. The court misled the jury in its charge upon the law applicable to the first, second and third pleas of the defendants.

6. The merits of the case are with the appellants and they are entitled to a verdict and judgment upon the whole case as presented by the record.

As to the said errors numbered 4 and 5, it may properly be remarked that they are very general in their character,

but not more so than the exceptions to the charge of the judge to the jury. The only exception is to the whole charge in these words, "To which said opinion and charge of the court upon every of the defendant's pleas, the said defendants by their attorney did then and there except."

In Lincoln vs. Claflin, 7th Wallace, 132, 139, the opinion of the court has this language: "It is possible that the court erred in its charge upon the subject of damages in directing the jury to add interest to the value of the goods. Interest is not allowable as a matter of law except in cases of contract, or the unlawful detention of money. In cases of tort its allowance as damages rests in the discretion of the jury. But the error, if it be one, cannot be taken advantage of by the defendants, for they took no exception to the charge on that ground. The charge is inserted at length in the bill. * * * It embraces several distinct propositions, and a general exception in such a case cannot avail the party if any one of them is correct."

Now, while the judgment thus announced by the Supreme Court of the United States is based upon a rule adopted regulating the practice in that court and is in accordance with the very general practice of the State courts, and with the rules of this court, we have not been inclined to hold parties to the very letter, and have subjected ourselves frequently to much labor and inconvenience by relaxing it, and we are not now inclined to be rigid.

The Supreme Court of the U. S. in the case cited found, by exploring at random the charge of the court, an error which would have been fatal had an exception been taken to the particular language of that portion of it, yet because the appellant had merely entered a general exception to the whole charge, the court finding it generally correct, refused the benefit of the error to the party injured by it. See also Pratt vs. Foot, 5 Selden, 463; Shepherd vs. Benton, 20 Iowa, 41; Spray vs. Scott, Ib., 473.

In the case at bar we find the charge given at length,

covering some six written pages, with the single exception to the whole charge as above noted.

As the charge of the court upon the matter of the first plea contains but one or two brief propositions, the general exception as to that is not subject to a strict enforcement of the rule.

The 5th ground of error, that the court "misled the jury in its charge upon the law applicable to the first, second and third pleas," we will briefly consider, but in order to ascertain in what the error consisted we are obliged to resort to the brief and argument of counsel in order to find the point of the objection; and the part of the charge as to the first plea so objected to is as follows: "It is incumbent on the defendant to prove that he has paid the notes sued on; this may be either in money, or if by other notes, he must show that they have been paid." The opinion of Ch. Justice Marshall is quoted in opposition to this, (6 Cranch, 253,) as follows: "The note of one of the parties, or of a third person, may *by agreement* be received in payment. The doctrine of *nudum pactum* does not apply to such a case, for a man may, if such be his will, discharge his debtor without any consideration."

The charge of the circuit judge was, however, in our judgment applicable to the case as it appeared in evidence. The defendant Sloan says he gave the drafts and the new notes as a "payment" of the original notes held by Gamble; but he does not swear that Gamble *received* or *agreed* to receive them in payment of the old notes, or that Sloan proposed it to him. Sloan's testimony is to a conclusion of law and fact, and not to the facts from which such a conclusion can be drawn. Sloan's testimony further shows that the new notes were not delivered to or received by Gamble at all, but were to be delivered upon the happening of another event, which has not transpired. Gamble swears that he did not receive the notes in payment or in satisfaction of the old notes.

The Supreme Court of New Hampshire in Elliot vs.

Sleeper, say we have settled, after much deliberation, that the receipt of a note is not a payment of a prior debt, unless by express argument.

In 7 Foster, 253, the same court say, a promissory note is not a payment of a pre-existing debt, unless there be an agreement to that effect when the note is given.

In 15 New Hampshire, 332, it was held that to make a note a payment of a pre-existing debt, there must be either an express agreement to receive it in payment, or there must be circumstances from which an agreement might be inferred.

Lord Kenyon says in Puckford vs. Maxwell, 6 T. R. 52, where a bill is given for a debt, and in payment of it, if the bill which is given in payment do not turn out to be productive, it is not that which it purports to be, and which the party receiving it expects it to be, and therefore he may consider it a nullity and act as if no bill had been given at all.

In Bank vs. Bobo, 9 Richardson, 31, the court say, to constitute anything else than money a payment, it must be accepted as such, or payment in fact *must result from it.* The case of Peters vs. Burnhill, 1 Hill (S. C.,) 236, *a,* was a case where a note was set up as payment, and the court held if it was accepted as such, it might be so regarded. In Costello vs. Cave, 2 Hill, 531, the judge says that if a bill or note be given on account of a previous debt, this is no payment unless it be *expressly accepted* as payment, *or produce payment,* and see Mooring et al. vs. M. Mutual Ins. Co., 27 Ala., 254, fully sustaining the almost universal doctrine.

In the entire absence of any proof going to show that Gamble received the notes as a payment, or agreed that the entire transaction should then operate as a payment, there was nothing before the jury to establish a payment of the original notes. Had the new notes been delivered to Gamble and retained by him, it would then, under the circumstances of this case, have been a question to be submitted to the jury whether such an agreement was made. The mere giving of the new notes, and their acceptance, in considera-

·tion of a precedent debt is not a payment and does not extinguish the debt, unless such agreement can be deduced from the circumstances, or unless, in the language of cases cited above, the new notes "produce payment," or payment in fact "results from it." And the language of the circuit judge in the charge upon the point is very nearly synonymous with that quoted from 9th Richardson and 2d Hill, and fully sustained in Puckford vs. Maxwell. Maine, Vermont and Massachusetts are the only States in which a different rule has prevailed, and in those States it has recently been modified to the extent that the giving and receiving of a new note for a prior indebtedness is presumptive evidence of payment. In the case at bar there was no evidence from which the jury could well infer that a payment was made beyond the amount of the two drafts which were indorsed upon the past due note of May and Sloan, and subsequently paid.

As to the second plea, accord and satisfaction, the defendants plead " that the plaintiff received from defendant Sloan, upon a valid bargain and agreement entered into between them, in lieu of the notes sued upon, and in full satisfaction and discharge of the same," the drafts and notes mentioned.

" Accord and satisfaction, (says Parsons on Contracts,) is substantially another agreement between the same parties in satisfaction of the former one, and also an execution of the latter agreement. This is the meaning of the ancient rule, that accord without satisfaction is no bar to an action ; and it used to be laid down in the earlier books with great exactness that the execution of the accord must be complete and perfect. So, indeed, it must be now, except where the new promise itself is, by the accord or agreement, the satisfaction for the debt or broken contract. * * * * Generally, but not universally, if the new promise be founded upon a new consideration and is clearly binding on the original promisor, this is a satisfaction of the former claim, and otherwise it is no satisfaction. * * If the new

promise is executory, and is not binding, it is no satisfaction until it be executed, and although it is to be performed on a future day certain, the promisee may have his original action before the new promise becomes due." 2 Parsons on Con., 681, 5th edition.

A plea that the plaintiff accepted an order of the defendant on a third person for a given sum in satisfaction of the promises, is no bar to an action for the original cause of indebtedness; nor is a plea good as an accord and satisfaction that the plaintiff agreed to accept the note of a third person, which, on being tendered, he refused to accept. Hawley vs. Foote, 19 Wend., 516.

The charge of the court upon the matter of the second plea is found to be somewhat general, and contains propositions which are good in law. If the defendant desired a more specific charge, he had an opportunity and the right to request it, and to suggest such instructions as he desired should be specifically given, according to his view of the case. We do not think the jury were misled by the instructions given, and unless it appears to be probable that they were led to a misapprehension of the case or the law, by the absence of more full and minute instructions, there would be no propriety in disturbing their finding. The charge was not violative but was in accordance with the law already quoted from standard authority. The jury were correctly instructed as to their duty in reference to the finding of the facts necessary to sustain the plea, and we cannot disagree to their conclusions. The new agreement proved was an agreement assented to on the part of the plaintiff at the request of the defendant Sloan, and for his benefit exclusively, without any consideration to plaintiff beyond the promise of more promptness in making payment of the money due and to become due. The agreement was entirely executory, except as to the two drafts of $1,000 each. There was no new agreement to purchase the land, no new or other consideration as to its price, but a mere consent by plaintiff to

convey to Sloan as assignee of May, the assignment having been executed long before, and to which the plaintiff was not a party. The amount of the two drafts was indorsed as so much received upon the old notes, on the same day—a circumstance confirmatory of plaintiff's testimony as to the character of the whole transaction, for if he had regarded the agreement as a *satisfaction* of the former notes, he would very naturally have treated them as satisfied and not as subsisting demands. The effort to treat the accord as executed by the delivery to Mr. Pasco of the new notes and the mortgage, can scarcely be treated seriously in the face of the advice of the depositary to the plaintiff, to the effect that in case of the non-payment of the drafts, he could fall back upon the original notes, whether the adviser be deemed the attorney of the plaintiff or of the defendant, or of both, on that occasion, and the absence of any vestige of consideration or benefit to the plaintiff, the amount of the drafts being much less than was already due, left no shadow of legal obligation on the part of the plaintiff to perform. The drafts were given and received to be applied upon the original indebtedness and were so applied.

As to the third plea as a defence upon equitable grounds, the only facts alleged and necessary to be considered in addition to those already referred to, are, that Sloan was the surety of May upon the original notes, and that by the terms of the new agreement with the plaintiff, May sold to Sloan his interest in the lands, and upon the further consideration that Sloan would assume and pay the balance due for the lands to plaintiff, the plaintiff thereupon received and accepted Sloan as the purchaser, and assented to his taking possession of the same, and released the defendant May from all further liability, &c.

In this plea the only fact additional to those set up in the previous plea, and as an equitable consideration, is that of the purchase by Sloan from May in pursuance and in consequence of his changed relations toward the plaintiff. The

proofs on the subject were that "*after* the purchase from May he went to plaintiff and made the arrangement set forth in the papers submitted," and two months after this arrangement he paid May for his interest in the land "by *crediting* him with the amount" on a *previous liability* to Sloan, May still owing him a large sum; and this is the testimony of Sloan himself.

The equitable premises being thus swept away by the defendant's own testimony, it is unnecessary to consider the subject further. The charge upon this third ground of defence covers, in point of fact, the whole case, and we cannot ascertain upon an examination of it what portion of it is erroneous as applied to the pleadings and the facts proved. Nor does it disclose the fact that the court sought to prejudge the case; and upon the whole case we are of the opinion that no error was committed by the court in the charge which tended to prejudice the rights of the defendants under the law and the facts. Although the exceptions may show that there has been a mistake in the directions of the court to the jury, yet if it be upon a point on which justice has been done, or in which a mistake could not have altered the verdict, a new trial will not be granted. Ross vs. Bank of Burlington, 1 Aiken (Vt.) 43; Randall vs. Parramore, 1 Fla., 409; McKay vs. same, 5 Fla., 268; Doggett vs. Willey, 6 Fla., 482; Proctor vs. Hart, 5 Fla., 465.

We have given the principal and material parts of the testimony upon the trial, and as it appeared before the court upon the traverse of the affidavit upon which the attachment was issued, for the purpose of determining thereon whether the judge erred in deciding that the affidavit was true as to the allegation of indebtedness, and our judgment is that he committed no error in his finding upon the law and the facts in favor of the plaintiff.

The other points made by the assignment of errors are covered and disposed of in determining the questions stated.

The judgment of the Circuit Court is affirmed with costs.